UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**************************************** *

OLGER NESTOR UREÑA FLORES, *
MARIA SABINA FAJARDO DE UREÑA, *
MERCEDES BALDROMINA FAJARDO ZUNIGA, *
ANGELICA ANGELITA UREÑA FAJARDO, *
MIGUEL ANGEL UREÑA FAJARDO, AND *
MONICA BEATRIZ OBANDO FAJARDO, *
  *
                          Plaintiffs *    NO.
  *
vs. *    **308CV00884AVC**
  *    JUNE 11, 2008
ANTONIO DIBENEDETTO a.k.a. ANTONIO *
    D. BENNETTO, *
ANNA DIBENEDETTO, *
GIOVANNI DIBENEDETTO, AND *
FERDINANDO DIBENEDETTO *
  *
                        Defendants *
**************************************** 

*8Cv884 AVC* (handwritten)

## COMPLAINT

## PRELIMINARY STATEMENT

1.     This is an action brought pursuant to, inter alia, the Trafficking Victims

Protection Act, 22 U.S.C. § 7101 et seq., the Fair Labor Standards Act, 29 U.S.C. § 201

et seq, 42 U.S.C. § 1981, and Connecticut law, challenging Defendants' over ten year

history of coercing Plaintiffs' labor at wages below those mandated by federal and state

law.

2.     Plaintiffs seek to recover unpaid wages and other damages inflicted by

Defendants, who are owners, principals, employees and agents of Rocco's Pastry Shop

1

a.k.a. Rocco's Bakery. Defendants exploited Plaintiffs by implementing a broad scheme of physical, sexual and verbal abuse, psychological coercion, and threatened abuse of the legal process to keep Plaintiffs in their control and working for less than the wages mandated by federal and state law.

3.     Plaintiffs bring claims under the Trafficking Victims Protection Act ("TVPA"), which was enacted in 2000 to combat coerced labor, a modern form of slavery in which persons are forced—by actual or threatened physical harm, psychological abuse, or the abuse or threatened abuse of the legal process—to work, often for no or illegally low wages.  Human traffickers often target vulnerable workers who, like Plaintiffs, are from a foreign country, have limited education, and speak little or no English. Workers are especially vulnerable when, like several of the above-named Plaintiffs, they were first trafficked as children.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1595, and 29 U.S.C. § 216(b).  This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred within this judicial district and as all Defendants reside and may be found in this district.

## PARTIES

Plaintiffs

6.      Plaintiff Olger Nestor Ureña Flores (hereinafter, "Nestor Ureña") was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).

7.      Plaintiff Maria Sabina Fajardo de Ureña (hereinafter, "Maria Fajardo") was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).  She is the wife of Plaintiff Nestor Ureña .

8.      Plaintiff Mercedes Baldromina Fajardo Zuniga (hereinafter, "Mercedes Fajardo") was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).  She is the sister of Plaintiff Maria Fajardo.

9.      Plaintiff Angelica Angelita Ureña Fajardo (hereinafter, "Angelica Ureña") was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).  She is the daughter of Plaintiffs Nestor Ureña and Maria Fajardo.

10.     Plaintiff Miguel Angel Ureña Fajardo (hereinafter, "Miguel Ureña") was at times relevant to this Complaint an employee of Defendants, as that term is defined by

the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).  He is the son of Plaintiffs Nestor Ureña and Maria Fajardo.

11.     Plaintiff Monica Beatriz Obando Fajardo (hereinafter, "Monica Obando") was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and by Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2).  She is the daughter of Plaintiff Mercedes Fajardo.

12.     All Plaintiffs reside in the District of Connecticut.

Defendants

13.     Defendant Antonio DiBenedetto a.k.a. Antonio D. Bennetto (hereinafter "Antonio DiBenedetto") is the owner, operator, member, and manager of Rocco's Bakery, also known as Rocco's Pastry Shop (hereinafter, "Rocco's Bakery" or "the bakery").  At all times relevant to this Complaint, Defendant Antonio DiBenedetto had operational control over the payment of wages and compensation by Rocco's Bakery to its employees, including Plaintiffs.

14.     At all times relevant to the Complaint, Rocco's Bakery was a retail and wholesale bakery with places of business at 432 Ferry Street, New Haven, Connecticut 06513 and 121 Main Street, Meriden, Connecticut 06451.

15.     Defendant Anna DiBenedetto is a co-owner, operator, member, and manager of Rocco's Bakery.  At all times relevant to this Complaint, Defendant Anna DiBenedetto had operational control over the payment of wages and compensation by

4

Rocco's Bakery to its employees, including Plaintiffs. She is also the wife of Defendant Antonio DiBenedetto.

16.      Defendant Giovanni DiBenedetto is the son of Defendants Antonio and Anna DiBenedetto and was, at all times relevant to this Complaint, hired to work at Rocco's Bakery in a supervisory capacity which included supervision of Plaintiffs.

17.      Defendant Ferdinando DiBenedetto is a son of Defendants Antonio and Anna DiBenedetto and was, at all times relevant to this Complaint, hired to work at Rocco's Bakery in a supervisory capacity which included supervision of Plaintiffs.

18.      At all times relevant to this action, Defendants Antonio and Anna DiBenedetto were employers of each Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and Connecticut Wage and Hour Law, Conn. Gen. Stat. § 31-58 et seq.

19.      At all times relevant to the Complaint and while employed by Defendants, Plaintiffs were engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 206(a) and § 207(a)(1).

20.      At all times relevant to the Complaint, Rocco's Bakery employed two or more employees and was engaged in commerce or engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203(s)(1).

21.      All Defendants reside in the District of Connecticut.

.

.

## STATEMENT OF FACTS

Recruitment and Hiring of Plaintiffs

22.     Plaintiffs are all citizens and natives of the country of Ecuador and are Hispanic.

23.     Plaintiffs are native speakers of an Ecuadorian regional dialect of Spanish and have limited formal education.

24.     Approximately fourteen years ago, Plaintiff Nestor Ureña came to the United States from Ecuador and was hired by Defendant Antonio DiBenedetto to work at Rocco's Bakery.

25.     Defendant Antonio DiBenedetto informed Plaintiff Nestor Ureña that he would hire Plaintiff's family members to work at Rocco's Bakery if they came to Connecticut from Ecuador.

26.     Over the course of several years, a number of Plaintiff Nestor Ureña's family members, including Plaintiffs Maria Fajardo, Mercedes Fajardo, Angelica Ureña, Miguel Ureña, and Monica Obando, came to Connecticut from Ecuador and were hired by Defendant Antonio DiBenedetto to work at Rocco's Bakery.

27.     Plaintiffs Angelica and Miguel Ureña began working full-time at Rocco's bakery at the ages of thirteen and fourteen, respectively.  Defendant Antonio DiBenedetto was aware that both Plaintiffs were under the age of eighteen when they began working at Rocco's Bakery.  When Plaintiffs Angelica and Miguel Ureña arrived in Connecticut, Defendant Antonio DiBenedetto told their parents, Plaintiffs Nestor Ureña and Maria Fajardo, that children who were not in this country legally could not attend public school.

Working Conditions

28.    As Defendants' employees, Plaintiffs prepared baked goods and cleaned and maintained industrial baking facilities.  Plaintiffs—including Plaintiffs Angelica and Miguel Ureña who worked as children —were responsible for lifting and moving large quantities of flour and other ingredients, baking breads and pastries, operating and maintaining industrial baking machines, and cleaning the facility itself, including the floors, walls, and bathrooms.

29.    Plaintiffs worked at both the bakery's retail location in New Haven, Connecticut, and at the factory location in Meriden, Connecticut.  The factory location in Meriden, Connecticut, makes large quantities of broccoli and spinach bread.

30.    Plaintiffs' work was jointly overseen and directed by Defendants. Defendants spoke to Plaintiffs using a mixture of Italian, Spanish, and English.

31.    Defendants were the ultimate authority in determining the number of workers to be hired, the tasks to be performed by each worker, the conditions of employment, and the wages to be paid.

32.    When Plaintiffs worked at the retail location of the bakery, they worked primarily in the back room where the baked goods were prepared.  The employees who worked in the front of the bakery were non-Hispanic, and several of them were female and Polish.  Plaintiffs had limited interactions with the employees who worked in the front of the bakery.

33.    In the last several years, Defendants moved most of the male employees, including Plaintiff Nestor Ureña, to the night shift.  The day shift was then worked primarily by female employees, including female Plaintiffs Maria Fajardo, Mercedes

Fajardo, Angelica Ureña, and Monica Obando.  The separation of male and female workers was designed to facilitate the physical and sexual abuse of the female workers described below.

34.    Defendants also selected female workers, including Plaintiffs Maria Fajardo, Angelica Ureña, and Monica Obando, to work at the Meriden location twice a week.  Often, Defendant Antonio DiBenedetto went to the Meriden location with only female workers, including Plaintiffs Maria Fajardo, Angelica Ureña, and Monica Obando.

35.    Plaintiffs who worked the day shift typically worked six days each week and regularly worked over eight hours a day.  During busy times, Plaintiffs who worked during the day shift worked as many as 12 hours a day.

36.    Plaintiffs who worked the day shift were denied lunch and bathroom breaks despite regularly working over eight hours a day.

37.    Plaintiff Nestor Ureña worked the night shift and regularly worked more than forty hours per week.

Housing Conditions

38.    Defendants Antonio DiBenedetto and Anna DiBenedetto own apartments above and immediately adjacent to Rocco's Bakery. The apartments are located at 432 and 438 Ferry Street, in New Haven, Connecticut.

39.    The Defendants rented these apartments to Plaintiffs and their families during the course of their employment as a means of controlling Plaintiffs and compelling their continued employment at Rocco's Bakery.

8

40.     Defendants insisted that Plaintiffs not open their door to anyone. Defendants also prohibited Plaintiffs from bringing guests to their apartments.

41.     Defendant Antonio DiBenedetto insisted that Plaintiffs not reveal where they worked to anyone not affiliated with Rocco's Bakery.  He also threatened that if Plaintiffs revealed where they worked, he would evict them, fire them from their jobs, and cause them to be deported.

42.     Despite repeated requests by Plaintiffs for written lease agreements and receipts for their monthly rent payments, Defendants refused to provide Plaintiffs with any documentation concerning their housing.

43.     As their landlord, Defendants prevented Plaintiffs from having cars by restricting their ability to park vehicles at or near the bakery or the apartments.

44.     Defendant Antonio DiBenedetto's refusal to provide Plaintiffs with any documentation of their employment or residency prevented them from being able to properly file their state and federal taxes, to apply to legalize their immigration status, to obtain state benefits for their United States citizen children, and to apply for payment assistance for hospital bills.


Failure to Pay Minimum Wage and Overtime

45.     Defendants did not pay Plaintiffs the federal and/or Connecticut hourly minimum wage for each hour they worked.

46.     Defendants did not pay Plaintiffs at the rate of one and one-half times their regular hourly rate for each hour worked in excess of forty hours a week.

47.    Defendants did not keep accurate wage and hour records as required by federal and state law.

48.    Defendants always paid Plaintiffs in cash.

49.    Although Plaintiffs repeatedly requested that they be paid by check or that they be provided with some documentation of their employment, Defendants refused to do so.

50.    On at least one occasion, Plaintiff Mercedes Fajardo requested documentation of her wages so that she could apply for assistance with hospital bills.  In response, Defendant Antonio DiBenedetto yelled at her that she must never tell anyone where she worked and stated that Rocco's Bakery would never confirm that it employed her.

51.    On another occasion, Nestor Ureña requested that Defendant Antonio DiBenedetto provide him with documentation concerning his employment at Rocco's Bakery so that he could apply to change his immigration status.  Defendant refused and told him he would never be able to change his status.

Intolerable and Unlawful Working Conditions

52.    Defendants Antonio, Ferdinando, and Giovanni DiBenedetto sexually, physically, and verbally abused the female Plaintiffs while they worked.

53.    Defendant Antonio DiBenedetto engaged in unwanted touching of the female Plaintiffs, putting their hands on the Plaintiffs' breasts and buttocks, inside and outside of Plaintiffs' clothing.

54.     When the female Plaintiffs asked Antonio DiBenedetto not to touch them, he said to them, "You want it," "You want me," and "You are in love with me."

55.     On one occasion during the summer of 2007, Defendant Antonio DiBenedetto transported several female employees, including Plaintiff Angelica Fajardo, to the Meriden location of the bakery.  Defendant Antonio DiBenedetto pushed Plaintiff Angelica Fajardo out of the bakery area and into an office where he tried to take off her clothes. He grabbed her breasts and rear end and pushed her on to a desk where she fell onto a metal machine that bruised her. He attempted to sexually assault her and only by calling for the help of a co-worker was she able to escape.

56.     On multiple occasions at the Meriden factory Defendant Antonio DiBenedetto forced female employees to watch him while he removed his clothes and walked around naked in front of them.

57.     Defendant Antonio DiBenedetto sexually propositioned the female Plaintiffs while they worked, telling them that if they allowed him to engage in sexual activity with them, Defendants would loan them money or not charge them rent.

58.     When the female Plaintiffs did not have money to pay their rent, Defendant Antonio DiBenedetto demanded that the female Plaintiffs provide sex in exchange for rent money.

59.     The female Plaintiffs were subjected to sexual assault as a condition of their continued employment and housing.

60.     The female Plaintiffs were in fear for their physical safety while at work, especially when Defendant Ferdinando DiBenedetto bought and used drugs at Rocco's Bakery during Plaintiffs' shifts.

11

61.     When Defendant Ferdinando DiBenedetto used drugs, he became increasingly agitated and aggressive and, on at least one occasion, he threw a knife in the vicinity of female Plaintiffs.

62.     Physical assaults of Plaintiffs also included at least one occasion when Defendant Giovanni DiBenedetto intentionally pushed a metal bakery cart into Plaintiff Mercedes Fajardo's legs, injuring her, and another occasion when one of the Defendants caused heavy bakery equipment to fall on Plaintiff Mercedes Fajardo's head.

63.     Defendants Antonio, Ferdinando, and Giovanni DiBenedetto screamed obscenities at the female Plaintiffs.  Defendants called the female Plaintiffs "putas" ("whores") or "pendejas" ("assholes") and asked them sexually explicit questions, such as "Cuando vamos a chichar?" ("When are we going to fuck?").

64.     Defendants also frequently referred to Plaintiffs as "fucking Hispanics" or "fucking Spanish."

65.     When Defendants were not satisfied with the pace of Plaintiffs' work, Defendants yelled at Plaintiffs to work faster and harder.

66.     The female Plaintiffs experienced humiliation, anguish, and shame because of Defendants' sexual, physical and verbal abuse.  The female Plaintiffs concealed or attempted to conceal the abuse from their families, in particular the male Plaintiffs, both because of their feelings of humiliation and shame and because their families depended on their continued employment by Defendants to earn a living and have a place to live.

Threatened Abuse of the Legal Process

67.    Defendant Antonio DiBenedetto repeatedly warned Plaintiffs that if they complained about their working conditions, he would evict and deport them.

68.    Defendant Antonio DiBenedetto represented to Plaintiffs that he had powerful friends and pointed out customers whom he alleged were a judge and police officers.

69.    When the alleged judge and police officers visited the bakery, Defendant Antonio DiBenedetto stated to Plaintiffs' that the judge and police officers knew Plaintiffs' identities and that they would deport Plaintiffs at Defendant's request.

Firing of Plaintiff Mercedes Fajardo

70.    On June 4, 2007, Plaintiff Mercedes Fajardo attended a rally and a Board of Aldermen meeting at New Haven City Hall to express her support for the Elm City Resident Card, a municipal identification card available to all New Haven city residents, regardless of immigration status.

71.    The next day, on June 5, 2007, the *New Haven Register* ran a front-page story about the rally and the Board of City Aldermen meeting.  Plaintiff Mercedes Fajardo appeared in a photograph accompanying the article.

72.    When Plaintiff Mercedes Fajardo arrived at work on June 5, 2007, Defendant Antonio DiBenedetto had a copy of the *New Haven Register* article and photograph.

73.     Defendant Antonio DiBenedetto screamed at her that her photograph would lead law enforcement to discover that she worked at Rocco's Bakery and that Rocco's Bakery employed undocumented aliens.

74.     Defendant Antonio DiBenedetto became so physically threatening that Plaintiff Mercedes Fajardo feared for her physical safety and attempted to call 911 on her cell phone. She was so agitated that she mistakenly dialed 011.

75.     Speaking so that all the workers could hear, Defendant Antonio DiBenedetto screamed in broken English, Spanish and Italian: "Fucking Hispanos! Fucking Spanish garbage! You all are worthless! The ID card [New Haven municipal identification card] is not worth shit!" He said, "You want papers, but these papers are worthless. They are for going to the bathroom. I'll give you toilet paper instead."

76.     At the same time, Defendant Ferdinando DiBenedetto also yelled at Plaintiff Mercedes Fajardo: "All of your family—you, your mother, your daughters, your sisters, your aunts—all of you are prostitutes!"

77.     Defendant Antonio DiBenedetto also threatened Plaintiff Mercedes Fajardo again not to reveal to anyone that she or any of her family members worked at Rocco's Bakery.

78.     Defendant Antonio DiBenedetto then told Plaintiff Mercedes Fajardo to punch out on her timecard and not to return to work.

79.     This conduct by Defendants Antonio DiBenedetto and Ferdinando DiBenedetto caused Plaintiffs Maria Fajardo, Angelica Ureña, and Monica Obando, who all were present during the firing, to fear for their personal safety.

Criminal Investigation and Escape

80.     In 2008, Plaintiffs contacted Immigration and Customs Enforcement (hereinafter "ICE") about the working conditions at Rocco's Bakery.  Plaintiffs also decided to bring this civil action to assert their rights.

81.     Around this time, the male Plaintiffs learned about many of the abusive actions by Defendants toward the female Plaintiffs.  Learning about the extent and circumstances of the abuse of their family members caused the male Plaintiffs to experience humiliation, anguish, and shame.

82.     In May of 2008, Defendant Antonio DiBenedetto learned that Plaintiffs were planning to file a lawsuit against him.

83.     Plaintiffs contacted ICE to report their fear that Defendants would harm them in retaliation for their lawsuit.

84.     Fearing for their safety, in the middle of the night and with the assistance of ICE, the female Plaintiffs, along with their children, fled their jobs and apartments at the bakery.

85.     The female Plaintiffs and their children traveled in unmarked government cars to live in hiding at an undisclosed location, where they currently remain.

86.     Since their escape from Rocco's Bakery, Defendant Antonio DiBenedetto has attempted to contact the female Plaintiffs numerous times through co-workers and has attempted to find out information regarding where the female Plaintiffs are living, and whether their children are attending school.

87.     Through intermediaries, Defendant Antonio DiBenedetto continues to threaten Plaintiffs with retaliation, including deportation.

88.     None of the Plaintiffs have returned to work for Defendants because they believe that to do so would put them at risk of physical harm.

## CLAIMS FOR RELIEF

### COUNT ONE:
### TRAFFICKING VICTIMS PROTECTION ACT ("TVPA")
*(All Plaintiffs and All Defendants)*

89.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 88 of this Complaint as fully set forth herein.

90.     Defendants obtained the labor of Plaintiffs by means of the threatened abuse of law or of the legal process, in violation of the forced labor provisions of the Victims of Trafficking and Violence Protection Act of 2000. 18 U.S.C. § 1589; 22 U.S.C. § 7102(2)(B).

91.     Defendants coerced Plaintiffs' labor through the threat of eviction from their housing and the threat that Defendant Antonio DiBenedetto's "friends," the alleged judge and police officers, would deport Plaintiffs if Plaintiffs complained about their working conditions. Such threats constituted threatened abuse of the legal process under the TVPA. 18 U.S.C. § 1589(3); 22 U.S.C. § 7102(2)(C).

92.     Defendants also coerced Plaintiffs' labor through psychological and verbal abuse that was designed to convince Plaintiffs that they would suffer serious harm if they disobeyed Defendants' orders.

93.     As a result of Defendants' conduct as described above, Plaintiffs suffered emotional distress, pain, and suffering, for which they are seeking damages pursuant to 18 U.S.C. § 1595.

COUNT TWO:
CLAIM FOR RELIEF: FAIR LABOR STANDARDS ACT
*(All Plaintiffs; Defendants Antonio and Anna DiBenedetto only)*

94.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 93 of this Complaint as fully set forth herein.

95.     Defendants' failure or refusal to pay Plaintiffs at a rate equal to or greater than the federal minimum hourly wage violated the Fair Labor Standards Act, 29 U.S.C. § 206.

96.     Defendants' failure or refusal to pay Plaintiffs overtime at a rate equal to or greater than one-half times their regular hourly rate for hours worked in excess of forty hours in a week violated the Fair Labor Standards Act, 29 U.S.C. § 207.

97.     As a result of Defendants' unlawful wage payment practices, Plaintiffs suffered a loss of wages owed.

98.     The failure or refusal of Defendants Antonio DiBenedetto and Anna DiBenedetto to pay Plaintiffs consistent with the minimum wage and/or overtime requirements of the Fair Labor Standards Act constituted a willful disregard for Plaintiffs' rights.

COUNT THREE:
42 U.S.C. § 1981
*(Plaintiffs Mercedes Fajardo, Angelica Ureña, Maria Fajardo, & Monica Obando only;*
*Defendants Antonio, Giovanni, and Ferdinando DiBenedetto only)*

99.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 98 of this Complaint as fully set forth herein.

100.    As set out above, Defendants intentionally targeted Plaintiffs for physical and verbal abuse on the job and subjected them to less favorable working conditions because of their race.

101.    In addition to the continuous and repeated use of racist language directed at the Plaintiffs, Defendants also engaged in or permitted sexually explicit language, unwanted sexual touching, and efforts to coerce sexual activity directed at Plaintiffs Mercedes Fajardo, Angelica Ureña, Maria Fajardo, and Monica Obando. This conduct was not engaged in or permitted toward other non-Latino or non-Hispanic female employees of the Defendants. By their actions, Defendants Antonio DiBenedetto, Ferdinando DiBenedetto, and Giovanni DiBenedetto intentionally discriminated against the Plaintiffs, harassed them, and created a hostile work environment based on their race.

102.    The work place at Rocco's Bakery was so permeated with discriminatory intimidation, ridicule, and insult of sufficient severity and duration that it altered the working conditions for Plaintiffs Mercedes Fajardo, Angelica Ureña, Maria Fajardo, and Monica Obando.

103.    Such discriminatory conduct is actionable under 42 U.S.C. § 1981.


COUNT FOUR:
CONNECTICUT WAGE PAYMENT LAWS
*(All Plaintiffs; Defendants Antonio and Anna DiBenedetto only)*


104.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 of this Complaint as fully set forth herein.

105.    Plaintiffs bring this claim pursuant to Conn.Gen.Stat. § 31-72, alleging that the wage payment practices of Defendants Antonio DiBenedetto and Anna

18

DiBenedetto toward Plaintiffs violated Connecticut's wage payment laws, Conn. Gen.

Stat. §§ 31-71(a)-31-71(i), Connecticut's minimum wage statute, Conn.Gen.Stat. § 31-68,

and Connecticut's overtime wage statute, Conn.Gen.Stat. § 31-76b.

106.    As a result of the unlawful wage payment practices of Antonio

DiBenedetto and Anna DiBenedetto, the Plaintiffs suffered a loss of wages owed.


## COUNT FIVE:
## UNJUST ENRICHMENT
*(All Plaintiffs and All Defendants)*


107.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 106 of this Complaint as fully set forth herein.

108.    Defendants' deceit, abuse, and coercion practiced upon Plaintiffs enabled

them to obtain a benefit from Plaintiffs, namely, the operation and profit from the

operation of Rocco's Bakery with artificially low labor costs.

109.    Defendants have not provided this benefit to Plaintiffs.

110.    As a result of Defendants' conduct, Plaintiffs have suffered a detriment,

namely, a loss of the value of their labor.


## COUNT SIX:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(All Plaintiffs; Defendants Antonio, Giovanni, and Fernando DiBenedetto only)*


111.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through _____ of this Complaint as if fully set forth herein.

112.    Defendants Antonio DiBenedetto, Giovanni DiBenedetto, and Fernando DiBenedetto intended or knew or should have known that their conduct toward Plaintiffs was likely to cause the Plaintiffs to suffer severe emotional distress.

113.    The conduct of Defendants Antonio DiBenedetto, Giovanni DiBenedetto, and Fernando DiBenedetto, as described above, was extreme and outrageous.

114.    The conduct of Defendants Antonio DiBenedetto, Giovanni DiBenedetto, and Fernando DiBenedetto, as described above, caused the Plaintiffs to suffer severe emotional distress that included emotional reactions such as fear, shame, humiliation, embarrassment, disappointment, depression, anxiety, worry, helplessness, and powerlessness.

115.    Further, the conduct of Defendants Antonio DiBenedetto, Giovanni DiBenedetto, and Fernando DiBenedetto, as described above, was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.


COUNT SEVEN:
ASSAULT
*(Plaintiffs Mercedes Fajardo, Angelica Ureña, Maria Fajardo, & Monica Obando only;
Defendants Antonio DiBenedetto, Ferdinando DiBenedetto, and Giovanni DiBenedetto
only )*

116.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117.    By their actions, stated above, Defendants Antonio DiBenedetto, Ferdinando DiBenedetto, and Giovanni DiBenedetto, assaulted Plaintiffs Mercedes Fajardo, Angelica Ureña, Maria Fajardo, and Monica Obando by placing them in a

position of imminent apprehension of harmful or offensive contact as a result of which

Plaintiffs feared for their safety.

118.    As a result of assaults by Defendants Antonio DiBenedetto, Ferdinando

DiBenedetto, and Giovanni DiBenedetto, Plaintiffs Mercedes Fajardo, Angelica Ureña,

Maria Fajardo, and Monica Obando suffered severe apprehension of harmful contact and

feared for their safety.

119.    As a further sole and proximate result of assaults by Defendants Antonio

DiBenedetto, Ferdinando DiBenedetto, and Giovanni DiBenedetto, Plaintiffs Mercedes

Fajardo, Angelica Ureña, Maria Fajardo, and Monica Obando suffered damages.


COUNT EIGHT:
CONN.GEN.STAT. § 31-51q
*(Plaintiff Mercedes Fajardo only; Defendant Antonio DiBenedetto only)*

120.    Plaintiff Mercedes Fajardo repeats and reallege the allegations contained

in paragraphs 1 through 119 of this Complaint as fully set forth herein.

121.    Plaintiff Mercedes Fajardo's participation in a rally and a New Haven

Board of Aldermen meeting in order to show her support for the Elm City Resident Card

was speech on a matter of public concern, protected by the First Amendment of the

United States Constitution.

122.    Defendant Antonio DiBenedetto terminated the Plaintiff's employment on

account of her speech on a matter of public concern as described above.

123.    Defendant's conduct violated the Plaintiff's right to speak freely on

matters of public concern in the workplace pursuant to Conn.Gen.Stat. § 31-51q.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award them:

1.  Unpaid minimum wage and overtime wages pursuant to the federal Fair Labor Standards Act and Connecticut wage payment laws;

2.  An amount equal to the Plaintiffs' unpaid minimum wage and overtimes wages pursuant to the liquidated or double damages provisions of the federal Fair Labor Standards Act and Connecticut wage payment laws;

3.  Compensatory damages, including for Plaintiffs' pain, suffering and emotional distress;

4.  Any benefit unjustly obtained by Defendants from Plaintiffs;

5.  Punitive damages;

6.  Prejudgment and post-judgment interest;

7.  A temporary restraining order, preliminary and permanent injunctive relief against Defendants enjoining them from contacting Plaintiffs except as necessary for the prosecution of this action and from retaliating against them in any way as a result of the prosecution of this action.

8.  Reasonable attorney's and costs; and

9.  Such other relief as the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The Plaintiffs respectfully request a trial by jury as to all claims to which they are entitled.

Respectfully submitted,
Attorneys for Plaintiffs


Jennifer Mellon (ct 27235)
Shelley A. White (ct 05727)
New Haven Legal Assistance Assoc., Inc.
426 State Street
New Haven, CT 06510-2018
Tel: (203) 946-4811
Fax: (203) 498-9271
Email: swhite@nhlegal.org
Email: jmellon@nhlegal.org



Peter Goselin (ct 16074)
Livingston, Adler, Pulda, Meiklejohn
   and Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105-2922
Phone:  (860) 233-9821
Email:  pdgoselin@lapm.org