UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

*******************************

OLGER NESTOR UREÑA FLORES, ET. AL.,

    PLAINTIFFS

VS.

ANTONIO DIBENEDETTO a.k.a. ANTONIO
    D. BENNETTO., ET. AL.,

    DEFENDANTS

CIVIL DOCKET NO.
3:08cv00884(AVC)

AUGUST 22, 2008

*******************************

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

The plaintiffs have sued the defendants under a variety of federal and state laws for their treatment of the plaintiffs as employees of the defendants' bakery operation. The plaintiffs, who are low-income Ecuadorian nationals, assert that the defendants forced their labor by threats of deportation, eviction, and other legal action, subjected them to discriminatory treatment in the workplace, physically and sexually abused them, taunted them with ethnic slurs and sexually harassing comments and activity, and failed to pay them the wages required by federal and state law.

Defendants have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss five of plaintiffs' eight claims for relief for failure to state a claim.[1] Defendants do *not* challenge

---

[1] Specifically, defendants seek to dismiss plaintiffs' federal claims under claims under the Trafficking Victims Protection Act, 18 U.S.C. § 1595 (Count 1) and 42 U.S.C. § 1981 (Count 3), as well as plaintiffs' state law claims of intentional infliction of emotional distress (Count 6), assault (Count 7), and violation of Conn. Gen. Stat. § 31-51q (Count 8).

1

plaintiffs' federal and state wage and hour claims (Counts 2 and 4) or their claim of unjust enrichment. (Count 5). Accordingly, regardless of the Court's ruling on this motion, the case will go forward on at least three claims which are supported by many of the same facts that support the claims defendants seek to dismiss,.

Defendants correctly acknowledge their high burden for dismissing claims under Rule 12(b)(6). (Memorandum of Law in Support of Defendants' Motion to Dismiss, dated August 1, 2008, hereinafter "Memorandum," pp. 9-10). Fed. R. Civ. P. 8 only requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has long held that Rule 8 does not require the pleading of "specific facts" and that the complaint need only " 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' " Erikson v. Pardus, ___U.S.___, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) *quoting* Bell Atlantic v. Twombley, 550 U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) *quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Id. *citing* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendants are hard-pressed indeed to state that a 23-page complaint that includes 88 separate factual allegations doesn't give them "fair notice" of the basis for each claim. Recognizing their inability to meet their burden, the defendants misapply the pleading requirements for federal complaints[2] and misstate the elements of the challenged claims.

---

[2] Many of the cases cited by the defendant are Connecticut state cases in which parties are subject to far more stringent pleading requirements. The Connecticut Superior Court Rules are *not* based on the Federal Rules of Civil Procedure. Connecticut requires *fact*

2

As set forth below, defendants' motion to dismiss is not only legally baseless, but their memorandum in support is so rife with misrepresentations and misapplications of cited case law, it is sanctionable under Fed. R. Civ. P. 11. It must be denied in its entirety.

I. **PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER THE TRAFFICKING VICTIMS PROTECTION ACT (COUNT 1)**

Count 1 of plaintiffs' complaint seeks damages, costs, and attorneys fees under the Trafficking Victims Protection Reauthorization Act of 2003 (hereinafter "TVPA"). The TVPA provides that "[a]n individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. §1595. The statutes referenced in 18 U.S.C. §1595 create civil liability for three separate activities:

*Forced labor* (18 U.S.C. § 1589):

> Whoever knowingly provides *or obtains* the labor or services of a person (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that if the person did not perform such labor or services that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of the legal process. . . (Emphasis added)

*Trafficking Into Servitude* (18 U.S.C. § 1590):

> Recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of the laws prohibiting slavery, involuntary servitude, debt bondage or forced law.

---

*pleading* as set forth in Connecticut Practice Book §10-1 which states that complaints filed in Superior Court must "contain a plain and concise statement of the material facts on which the pleader relies." This requirement stands in stark contrast to the notice pleading requirements under Federal Rule 8. *See* Alexander v. Commissioner of Administrative Services, 86 Conn. App. 677, 686 and n. 7 (2004). Defendants' effort to conflate the two requirements is only one of a multitude of misrepresentations of the case law cited in their memorandum in support of their motion to dismiss.

3

*Sex Trafficking of Children or by Force, Fraud, or Coercion* (18 U.S.C. § 1591):

> Whoever knowingly – in or affecting interstate or foreign commerce. . .recruits, entices, harbors, transports, provides, or obtains by any means a person or benefits, financially or by receiving anything of value, from participation in a venture. . . knowing that force, fraud or coercion. . will be used to cause the person to engage in a commercial sex act or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act. .

Plaintiffs' TVPA claim is based on defendants' violation of the forced labor statute, 18 U.S.C. §1589. Section 1589 makes it illegal to obtain the labor of any person by, *inter alia*, 1) threats of serious harm to that person or others; 2) schemes, plans or patterns intended to cause the person to believe that if they did not perform such labor they or some other person would suffer serious harm; and 3) threatened abuse of process.

Plaintiffs allegations clearly state a claim for relief under 18 U.S.C. § 1589. The plaintiffs are all Ecuadorian nationals who speak little English and have little formal education. (Compl. ¶¶ 1, 2). Two plaintiffs came to this country as children, and immediately began working for defendants. (Compl. ¶ 27). Most worked for the defendants for more than a decade. (Compl. ¶¶ 24, 26, 27). They worked long hours, usually six but sometimes seven days a week, in the back areas of the shop and in the factory where they did not mingle with customers or even other workers. (Compl. ¶¶ 32, 35, 37). Plaintiffs spell out in detail how the defendants coerced their labor by threats of deportation (Compl. ¶ 67-69), psychological and verbal abuse (Compl. ¶¶ 27, 63-65), and outright physical violence (Compl. ¶¶ 33, 52-62), designed to convince the plaintiffs that they would suffer even more serious harm in they disobeyed the defendants' orders.

Defendants claim that, because plaintiffs have not alleged facts showing they were recruited, transported, or harbored by the defendants for purposes of forced labor, or

4

facts showing that they were somehow physical restrained by defendants, plaintiffs have "failed to allege all of the elements necessary to state a claim under the TVPA." (Memorandum, p.14). This "interpretation" of the TVPA not only ignores the plain language of 18 U.S.C. §1589, but is based on the language of *an international protocol*[3] that was the basis for an *Alien Torts Claims Act, 28 U.S.C. §1350,* claim in Topo v. Dhir, 2003 U.S. Dist. LEXIS 21937 at *12 (S.D.N.Y. 2003).[4] (Memorandum, 10).

Facts demonstrating the recruitment, transportation, or the harboring of trafficking victims are not necessary to state claim under 18 U.S.C. §1589. They may be elements of a claimed violation of *18 U.S.C. § 1590,* which is *also* actionable under 18 U.S.C. §1595, but such facts are *not* required to demonstrate a violation of the forced labor statute, 18 U.S.C. 1589.[5] The two acts – trafficking into forced labor and the forced labor itself –

---

[3] The international protocol cited by defendants is the U.N. Protocol Against Trafficking In Persons, Especially Women and Children. The United States is a signatory to this protocol, but has not ratified it. Kim & Hreschchyshyn, *Human Trafficking Private Right of Action: Civil Rights For Trafficked Persons in the United States*, 16 Hastings Women's L.J. 1, 5 (2004).

[4] Defendants misrepresent that Topo involved civil claims under the TVPA, when, in fact, the case pre-dated enactment of 18 U.S.C. §1595 which created civil liability for violations of the TVPA, and fail to state that Topo was brought under the Alien Torts Claims Act. Even more disturbing is defendants' failure to include some critically important language in their description of the case holding, to wit, the reference to the fact that the cited standard was expressly stated to be based on *international law* and *not* the federal TVPA. Id. at * 6. Then, adding insult to injury, defendants do not attach the entire case, thereby depriving the Court of the language that would show their blatant and sanctionable representation of the language of this case.

[5] Defendants also claim support for their "interpretation" of the TVPA from two cases which simply do not stand for this proposition. One case, Chellen v. John Pickle Co., 334 F.Supp.2d 1278 (N.D. Okla, 2004) didn't even have claims under the TVPA, and the other case, United States v. Marcus, 487 F.Supp. 2d 289 (E.D.N.Y. 2007) does not hold anywhere in the decision that purposeful solicitation by the defendant is an element of a claimed violation of 18 U.S.C. § 1589.

5

are separate violations of the TVPA and each gives rise to liability under 18 U.S.C. §1595.[6]

The TVPA was originally enacted in 2000 to comprehensively address, by new criminal statutes, new immigration visas, and federal funding for victims, the problem of human trafficking. Human trafficking is a modern-day form of slavery in which persons are forced—by actual or threatened physical harm, psychological abuse, or the abuse or threatened abuse of the legal process—to work, often for no, or illegally low, wages. As Congress expressly found in enacting the TVPA, that human traffickers often target vulnerable workers who, like Plaintiffs, are from a foreign country, have limited education, and speak little or no English. 22 U.S.C. § 7102(b). They lure their victims "through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models." Id.

In proposing regulations to implement the TVPA, the Department of Justice expressly recognized that, under the TVPA, human trafficking differs from immigrant smuggling in which the smuggler arranges for the illegal entry of a noncitizen in the United States for any reason. See "New Classification for Victims of Severe Forms of

---

[6] This is made crystal clear in the case of United States v. Garcia, 2003 U.S. District LEXIS 22088 (W.D.N.Y. 2003) at * 3 attached to defendants' Memorandum as Exhibit 2, but apparently unread by defendants. The court in Garcia notes that "the defendant is charged in Counts 2-10 with 'allegedly providing and obtaining and attempting to provide and obtain the labor and services of another by the listed prohibited actions in [§ 1589].' (Docket # 43). . . In Count 11 of the indictment, the defendant is charged with 'having trafficked persons for labor by recruiting, harboring, transporting, providing and obtaining persons for forced labor by 'obtaining workers in Arizona and transporting them to New York and harboring them there in conditions of forced labor' in violation of *18 U.S.C. § 1590.*" (Emphasis added). Plaintiffs may amend their complaint at a later date to add claims under Section 1590, but their current TVPA claim is based on Section 1589.

6

Trafficking in Persons," 67 Fed.Reg. 4784, 4787 (Proposed Regulations, Jan. 31, 2002).

Human trafficking *can* involve transporting or assisting an alien in crossing an international border for the purpose of forced labor, and such activity *is* prohibited by the TVPA, 18 U.S.C. §1590. However, by its express language, the TVPA recognizes that, as with colonial slavery, the act of recruiting, transporting, and harboring slaves into slavery is as reprehensible as the act of obtaining and using such slaves. The legislative history of the TVPA confirms Congress' intent to *separately* criminalize -- and, in 2003, provide civil liability for -- forced labor, 18 U.S.C. §1589, *whether or not* the victim was *also* recruited, transported, or harbored for such a purpose:

> Section 1589 is intended to address the increasingly subtle methods of traffickers *who place their victims in modern-day slavery*, such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence. Section 1589 will provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude. . . *The conference agreement also includes new section 1590 for the crime of trafficking with respect to peonage, slavery, involuntary servitude, or forced labor. . .* (Emphasis added)

H.R. Conference Report 106-939 at 101 (2000).

Defendants' additional claim that the TVPA requires a showing of physical coercion by the defendants, such as assignment to defendant-owned apartments, restriction on movement or travel, dictation of lifestyle, confiscation of travel documents, or the posting of guards, (Memorandum at 16), is similarly belied by the language of §1589 and the above-quoted legislative history. Physical restraint is only one of several illegal means by which labor can be forced. Significantly, the language of § 1589 includes psychological coercion including threats of serious harm to the victim or another person, plans and schemes designed to cause the victim to believe he or she was a risk of

serious harm, and by the abuse or threatened abuse of legal process, all of which have been alleged by the plaintiffs.

Clearly, the TVPA recognizes that traffickers like defendants can coerce the labor of others without confiscating travel documents or posting guards at apartments. Psychological coercion, including the threatened abuse of process, which can be just as powerful as guards at a door, is sufficient to create civil liability under 18 U.S.C. § 1589. See United States v. Garcia, 2003 WL 22956917 (W.D.N.Y. 2003).[7] at *5 (holding that threats of deportation "fall within the concept and definition of 'abuse of legal process' since the alleged objective for same was to intimidate and coerce the workers into 'forced labor.'")[8]

It is a gross understatement to reduce plaintiffs' trafficking claim to one of "difficult working conditions and inferior wages. . . which are all too common throughout the world." (Memorandum, p. 14). This is a case in which impoverished and under-educated persons from another country have been exploited for ill-gotten gains by psychological terror, by threats of deportation, and by physical harm. They have stated a claim for relief under the TVPA, 15 U.S.C. §1589 and §1595 and defendants' motion to dismiss this claim must be denied.

## II. **PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER 42 U.S.C § 1981 (COUNT 3)**

The four female plaintiffs, Mercedes Fajardo, Angelica Ureña, Maria Fajardo, and Monica Obando, allege in Count Three a violation of 42 U.S.C. § 1981 which prohibits

---

[7] Attached to Defendants' Memorandum as Exhibit 2 using the LEXIS citation.

[8] Defendants blatantly misrepresent the holding in U.S. v. Garcia as standing for the proposition that abuse of process requires the actual issuance of legal process, ignoring the subsequent language in the decision quoted above. (Memorandum, p. 12).

8

discrimination in the making and enforcement of contracts. Defendants' claim that Count Three must be dismissed because it fails to allege the existence of a contractual relationship which was impaired by the defendants' actions. (Memorandum at pp. 19-20). This assertion is similarly meritless.

The term "making and enforcement of contracts" is broadly defined in 42 U.S.C. § 1981(b) to include the "making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." The Supreme Court has long held that Section 1981 affords a federal remedy for discrimination on the basis of race in private employment. Johnson v. Railway Exp. Agency, Inc. 421 U.S. 454, 459-60 (1974). Moreover, it is well established that 42 U.S.C. § 1981 creates a cause of action for racial[9] discrimination in employment based on a claim of a hostile work environment. Whidbee v. Garzarelli Food Specialties, Inc. 223 F. 3d 62, 69 (2d Cir. 2000).

The plaintiffs allege in their Complaint that defendants intentionally discriminated against them on the basis of race by their racist language, sexual harassment, intimidation, ridicule, and insult that was of sufficient severity and duration that it altered the working conditions for Plaintiffs. They clearly allege the existence of a contract -- the employment relationship between the defendants and themselves (Compl. ¶ 26) -- and intentional discrimination on the basis of race by the creation of a hostile work environment which clearly impaired that contract. (Compl. ¶¶ 52-66, 100-103). There is no question that the four female plaintiffs have sufficiently alleged a claim under 42

---

[9] For purposes of stating a claim under 42 U.S.C. § 1981, race includes ethnicity. St. Francis College v. Al-Khazraji, 481 U.S. 601, 605 (1987)

U.S.C. § 1981. No "magic language" about impairing a contractual relationship is required, and defendants' motion to dismiss this claim must also be denied.

III. **PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT 6).**

Defendants also seek to dismiss, at the pleading stage, plaintiffs' claim for intentional infliction of emotional distress as alleged in Count Six. Defendants correctly note that liability for this tort is based on conduct which is "extreme and outrageous," which is intended to cause emotional distress and which in fact does create such distress. Memorandum, pp. 21-22, *citing inter alia*, Petytan v. Ellis, 200 Conn. 243, 253 (1986).

Plaintiffs' complaint describes conduct that any reasonable person would consider to be extreme and outrageous. Only by ignoring plaintiffs' allegations regarding defendants' positions of power over them and their vulnerabilities, and only by limiting plaintiffs' description of their outrageous behavior to two discrete instances, can defendants make this straight-faced claim. Plaintiffs allege that defendants were their employers (Compl. ¶¶ 24-27). They allege that they are impoverished Ecuadorian natives who speak little English, have little formal education, and were completely dependent on the defendants for both employment and housing. (Compl. ¶¶ 22-23 ). Their claim of intentional infliction of emotional distress is *not* limited to two instances of physical abuse, as suggested by the defendants. (Memorandum pp. 27-28 *citing* Compl. ¶ 62 which alleges that, on one occasion, defendant Giovanni DiBenedetto 'intentionally pushed a metal bakery cart into Plaintiff Mercedes Fajardo's legs" and that, on another occasion, another of the defendants "caused heavy bakery equipment to fall on Plaintiff Mercedes Fajardo's head"). The claim also includes the entire litany of

psychological and physical abuse and sexual harassment heaped on the plaintiffs by the defendants. This abuse and harassment includes the obscenities thrown at the female plaintiffs (Compl. ¶¶ 63-64), the persistent touching of plaintiffs' breasts and buttocks and unwanted and uninvited sexual propositions (Compl. ¶¶ 54-55), the attempted sexual assault of Angelica Fajardo (Compl. ¶ 56), the naked prancing around the factory by defendant Antonio DiBenedetto (Compl. ¶ 56) and the agitated and aggressive knife-throwing antics of defendant Ferdinando DiBenedetto when he was high on drugs. (Compl. ¶ 61).

Plaintiffs' complaint not only puts the defendants on "fair notice" of the type of extreme and outrageous conduct which is at the heart of this claim, but it also specifically alleges that the above-described conduct of defendants caused the plaintiffs to suffer severe emotional distress that included emotional reactions such as fear, shame, humiliation, embarrassment, disappointment, depression, anxiety, worry, helplessness, and powerlessness. (Compl. ¶ 70). It further alleges that the above-described conduct of the defendants, was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs. These allegations more than meet the pleading requirements of the Federal Rules for this particular claim for relief.

Defendants correctly note that the determination of whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be decided first by the court before submission to a jury if reasonable minds could differ. Memorandum, p. 23 *citing* Johnson v. Cheseborough-Ponds' USA Co., 918 F. Supp. 543, 552 (D.Conn. 1996). What defendants' Memorandum does *not* say is that the determinations made in

11

most of the cases they cite in their Memorandum were not made at the motion to dismiss stage; rather, the determination was made on a directed verdict after trial, as was the case in Petyan v. Ellis, 200 Conn. 243, or on a summary judgment motion, Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, *after* discovery had been completed and the Court had the opportunity to hear and/or view the allegations as they would be presented to the jury.

Clearly plaintiffs have met the pleading requirements for this claim of extreme and outrageous conduct by defendants and their motion to dismiss this claim must also be denied.

IV. **PLAINTIFFS ALSO STATE CLAIMS FOR RELIEF FOR ASSAULT (COUNT 7) AND FOR DEFENDANTS' VIOLATION OF CONNECTICUT'S FREE SPEECH LAW (COUNT 8)**

Count Seven of plaintiffs' Complaint, also brought by the four female plaintiffs, is a claim for assault by Antonio DiBenedetto and his sons Giovanni and Frederico. Defendants claim that Count Seven must be dismissed because the Complaint fails to specifically allege that defendants "intended" to cause "harmful or offensive conduct" citing Doe v. City of Waterbury, 453 F. Supp. 2d 537, 552 (D.Conn. 2006). (Memorandum, p. 32). Once again, defendants misstate the holding in a cited case. Doe v. Waterbury is a decision on a *summary judgment* motion, and *not* a decision on a Rule 12(b)(6) motion. The court made no ruling on the sufficiency of the allegations in plaintiffs' complaint; rather, the court recited the standards for civil liability for the tort of assault, and then ruled in the plaintiffs' favor on the basis of the record presented in connection with the summary judgment motion.

Moreover, plaintiffs *have* alleged facts showing an intent to cause harmful or offensive conduct. Plaintiffs' claims are based, *inter alia*, on the plaintiffs' allegations regarding defendants' unwanted touching of the female plaintiffs by putting their hands on the plaintiffs' breasts and buttocks and inside and outside of plaintiffs' clothing. (Compl. ¶ 53). Clearly, this conduct is offensive and unwanted, and plaintiffs allege that this behavior was intentional because, in the very next paragraph, plaintiffs allege that they specifically asked Antonio DiBenedetto not to touch them, and he said to them, "You want it," "You want me," and "You are in love with me." (Compl. ¶ 54).

Plaintiff Angelica Farjardo also alleges intentional offensive and unwanted conduct by defendant Antonio DiBenedetto when he pushed her out of the bakery area and into an office where he tried to take off her clothes. (Compl. ¶ 55). She alleges that defendant grabbed her breasts and rear end and pushed her on to a desk where she fell onto a metal machine that bruised her, and that he attempted to sexually assault her. (Id.) Finally, plaintiffs *specifically* allege intentional offensive and unwanted conduct by defendant Giovanni DiBenedetto who is alleged to have *intentionally* pushed a metal bakery cart into Plaintiff Mercedes Fajardo's legs, injuring her, and similar conduct by the defendant who *caused* heavy bakery equipment to fall on Plaintiff Mercedes Fajardo's head. (Compl. ¶62).

Finally, defendants seek to dismiss Count Eight, in which plaintiff Mercedes Frajado asserts a violation of Connecticut's free speech law, Conn. Gen. Stat. § 31-51q, arising from defendants' firing of her for attending a rally in support of immigrants rights. Citing a *state law decision* on a motion to strike, Lehman v. Connecticut Legal Rights Project, Inc. 2006 WL 2130400 (Conn. Super. 2006), defendants' assert that this

13

claim must be dismiss because the plaintiffs do not allege that Ms. Fajardo's exercise of protected speech did not substantially interfere with her job performance or with her working relationship with her employer. (Memorandum, p. 34). Lehman was not a ruling on a Rule 12(b)(6) motion, and the state court did *not* determine the sufficiency of the plaintiff's allegations under Fed. R. Civ. P. 8. This is yet another example of the defendants deliberately confusing federal and state pleading requirements. *See supra*, note 2.

Plaintiff Fajardo's claims certainly meet the "fair notice" requirements of the Federal Rules. (Compl. ¶ 70-79). On June 4, 2007, Plaintiff Mercedes Fajardo attended a rally and a Board of Aldermen meeting at New Haven City Hall to express her support for the Elm City Resident Card, a municipal identification card available to all New Haven city residents, regardless of immigration status. The next day, on June 5, 2007, the *New Haven Register* ran a front-page story about the rally and the Board of City Aldermen meeting. Plaintiff Mercedes Fajardo appeared in a photograph accompanying the article. When she went to work that day, defendants were furious, screamed at her and her family, and fired her.

The facts alleged in plaintiffs' Complaint clearly show that Ms. Fajardo's exercise of her free speech and assembly rights had no *legitimate* impact on the defendants' workplace. Her attendance at the rally could not have interfered with her job performance because she wasn't even at work when she attended the rally, and the only way it affected her working relationship with her employers was the defendants' fear of exposure for illegal activities. This is not the kind of working relationship with which Conn. Gen. Stat. § 31-51q is concerned.

14

For these reasons, defendants' motion to dismiss counts seven and eight must be denied.

## V. **CONCLUSION**

For all of the above-described reasons, the defendants' Motion to Dismiss must be denied in its entirely.

RESPECTFULLY SUBMITTED,

_/s/ Jennifer Mellon_
Jennifer Mellon (ct 27235)
Shelley A. White (ct 05727)
New Haven Legal Assistance Assoc., Inc.
426 State Street
New Haven, CT 06510-2018
Tel: (203) 946-4811
Fax: (203) 498-9271
Email: jmellon@nhlegal.org
Email: swhite@nhlegal.org


Peter Goselin (ct 16074)
Livingston, Adler, Pulda, Meiklejohn
  and Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105-2922
Phone:  (860) 233-9821
Email:  pdgoselin@lapm.org

Attorneys for Plaintiffs

CERTIFICATION

This is to certify that on August 22, 2008 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Shelley A. White